IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:25-CV-00109-KDB

| | |
|---|---|
| CHRISTINE W. AKERS,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>Defendant. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff Christine Akers' appeal of an unfavorable administrative decision denying her application for disability insurance benefits under the Social Security Act. (Doc. No. 8). Having reviewed and considered the parties' briefs, the administrative record, and the applicable authority, the Court finds the Defendant Commissioner's decision to deny Akers Social Security benefits is supported by substantial evidence and uses the correct legal standards. Accordingly, the Commissioner's decision will be **AFFIRMED**.

I.      PROCEDURAL BACKGROUND

On January 6, 2022, Akers applied for disability insurance benefits under Title II of the Social Security Act, alleging that she had been disabled since September 30, 2021. Doc. No. 4-2 at 16. Her claim was denied initially and upon reconsideration. *Id.* Akers then requested a hearing before an Administrative Law Judge ("ALJ"), where she was represented by an attorney. *Id.* After a conducting a second hearing, ALJ L. Ellis Davis denied Akers' application in a decision dated May 1, 2024. *Id.* at 28. Akers sought review by the Appeals Council, which was denied on

1

February 13, 2025. *Id.* at 2–4. The ALJ's determination therefore stands as the final decision of the Commissioner. Akers now timely seeks judicial review under 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration ("SSA") to determine whether Akers was disabled during the relevant period.[1] At step one, the ALJ found that Akers was not currently engaged in substantial gainful activity and had not done so from the alleged onset date of September 30, 2021, through the date of his decision.[2] *Id.* at 18. At step two, the ALJ found that Akers had the following severe impairments: "diabetes mellitus; anxiety and obsessive-compulsive disorders; obesity; other disorders of the nervous system; other disorders of the gastrointestinal system; osteoarthrosis and allied disorders (20 [C.F.R. §] 404.1520(c))." *Id.* At step three, the ALJ found that none of Akers' impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at "20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525 and 404.1526)." *Id.* at 19.

Before proceeding to step four, the ALJ found that Akers had the residual functional capacity ("RFC") to

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except she can sit for up to 4 hours at a time and for a total of up to 6 hours out of an 8 hour workday; can stand for up

---

[1] The ALJ must determine under the five-step sequential evaluation: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite the claimant's limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

[2] Akers' Date Last Insured ("DLI") is December 31, 2026. Doc. No. 4-2 at 16.

to 3 hours at a time and for a total of up to 5 hours out of an 8 hour workday; can walk for up to 2 hours at a time and for a total of up to 5 hours out of an 8 hour workday. With respect to the right dominant upper extremity, she can occasionally reach overhead and occasionally push/pull. With the right dominant upper extremity, she can frequently reach in all other directions and frequently handle, finger, and feel. With respect to the left upper extremity, she can continuously reach to include overhead and in all other directions. She can frequently handle, finger, feel, push/pull. She can frequently bilaterally operate foot controls. She must never climb ladders, ropes, or scaffolds and never crawl. She can occasionally balance, kneel, and crouch and frequently climb stairs and ramps and can frequently stoop. She must never be exposed to unprotected heights, operating a motor vehicle, but can occasionally be exposed to moving mechanical parts, humidity and wetness, extreme cold, extreme heat, and vibrations. She can frequently be exposed to dust, odors, fumes and pulmonary irritants. She can have moderate exposure to loud noise. She is limited to simple tasks with few workplace changes; can concentrate for 2-hour blocks at a time; and should have only occasional interaction with supervisors, co-workers and the general public.

*Id.* at 21–22.

At step four, the ALJ found that Akers was unable to perform her past relevant work as a retail salesclerk, quality control inspector, fast food cashier, store laborer, quality control checker, or cashier. *Id.* at 26. Finally, at step five, the ALJ concluded that there were other jobs in significant numbers in the national economy that Akers could perform based on her age, education, work experience, and RFC. *Id.* at 26–27. These jobs included assembler, electrical accessories; assembler, production; and mail clerk. *Id.* at 27. Thus, the ALJ found that Akers was not disabled under the Social Security Act from September 30, 2021, through May 1, 2024, the date of his decision. *Id.* at 27–28.

### III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604–05 (4th Cir. 2025); *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing

3

examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 98–99 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 102 (citation modified). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[3] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (citation modified). Accordingly, this Court does not review a final decision of the Commissioner *de novo*, *Metcalf v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Drumgold*, 144 F.4th at 604; *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

---

[3] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not." *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction "is so narrow that it is often very difficult for a court to decide upon which side of the line evidence falls"). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that "scintilla is Latin for 'whatever a judge wants it to mean.' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation modified). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id*. (citation modified); *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, the Court must always ensure that proper legal standards are being followed. *Long v. Kijakazi,* No. 1:22-CV-00091-KDB, 2022 WL 18026331, at *2–3 (W.D.N.C. Dec. 30, 2022).

## IV. DISCUSSION

Akers urges the Court to reverse the ALJ's finding of no disability or remand her case, contending that the ALJ erred by (1) failing to provide the symptom analysis required by SSR 16-3P, and (2) failing to clarify whether the restrictions in the RFC would limit Plaintiff to sedentary work. *See* Doc. No. 8.

### A. Deficient SSR 16-3P Analysis

Akers first alleges that the ALJ "never clearly articulated how he considered" her symptoms because the RFC he provided "was in clear contrast" with her subjectively reported symptoms. *Id.* at 9. In essence, Akers argues that the ALJ failed to adequately explain his reasons

for declining to fully credit her alleged symptom severity related to her headaches and mobility, which she maintains would support a more restrictive RFC than the ALJ provided. *Id.* at 9–11. The Commissioner responds that the ALJ thoroughly reviewed the record, sufficiently considered Akers' subjective complaints related to her conditions, and appropriately reconciled the inconsistencies among the evidence, the record, and her testimony when formulating the RFC. *See* Doc. No. 10 at 11–14.

A Social Security claimant's RFC must be based on all the evidence, accurately set forth all demonstrated impairments and limitations, and describe the claimant's maximum ability to perform sustained full-time work. *See* 20 C.F.R. § 404.1545(a); SSR 96-8P (defining the ability to work as the ability to do so "8 hours a day, 5 days a week ... on a regular and continuous basis"). Significantly, all of a claimant's impairments, even impairments found not severe, must be considered when formulating an RFC. § 404.1545(e). In considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ examines the entire case record. *See* SSR 16-3P. However, there is no "rigid requirement" that an ALJ specifically reference every piece of evidence in the record. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citations omitted). And, an ALJ's "failure to cite specific evidence does not indicate that it was not considered." *Manigo v. Colvin*, No. 0:13-CV-3185-BHH, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

Indeed, The ALJ is not required to provide "an exhaustive point-by-point breakdown of each and every listed impairment ... [r]ather, the ALJ is compelled to provide a coherent basis for his step-three determination." *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018). Further, an ALJ is not obligated to accept a plaintiff's subjective reports of limitations. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); *Mastro*, 270 F.3d at 178. Thus, the Court must "read the ALJ's

decision as a whole," and "an ALJ's step-three conclusion that the claimant did not meet the listing at issue can be upheld based on the ALJ's findings at subsequent steps in the analysis." *Keene*, 732 F. App'x at 177.

"[T]here is no particular language or format that an ALJ must use in his ... analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." *Jonathan W. v. Kijakazi*, No. 2:23-CV-00315, 2023 WL 5767748, at *9 (S.D.W. Va. Aug. 17, 2023), *report and recommendation adopted,* No. 2:23-CV-00315, 2023 WL 5751445 (S.D.W. Va. Sept. 6, 2023) (quoting Clark v. Comm'r of Soc. Sec., No. 2:09-CV-417, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010)) (citation omitted). Thus, an ALJ's opinion is "sufficient if it not only sets forth the facts used in rendering [her] decision, but it also provides a thorough examination of the medical evidence." *Id*. (internal quotations omitted). Finally, it is imperative that an ALJ's decision be "read as a whole in order to discern whether substantial evidence supports a finding." *Id.*

While Akers contends that the ALJ failed to assess the intensity and persistence of her symptoms, the record demonstrates otherwise. Although Akers alleges the ALJ disregarded her report that she has migraines once or twice a week, *see* Doc. No. 8 at 9, the Court notes that during her ALJ hearing, Akers explained that her migraines "*can* happen once or twice per week." Doc. No. 4-2 at 70. A material difference exists between testimony that migraines can–but do not invariably–occur once or twice weekly and testimony indicating that migraines routinely occur with such frequency. In any event, the ALJ expressly acknowledged Akers' reports of headaches, and explained that he considered them to be non-severe because the record contained no documentation that they had caused "restrictive limitations for a period of 12 continuous months." Doc. No. 4-2 at 19, 23. Additionally, while the medical record indicates that Akers had a history

7

Case 1:25-cv-00109-KDB    Document 12    Filed 11/19/25    Page 7 of 12

of headaches and took medication as needed to manage them, she did not report headaches or recurrent headache symptoms during most of her medical visits. *Compare* Doc. Nos. 4-7 at 101, 144, 160, 168, 178, 184, 195, 291, 391; 4-8 at 163, 163, 311; *with* 4-7 at 126, 315, 322; 4-8 at 128–157. The ALJ therefore neither failed to assess the intensity and persistence of Akers' symptoms, nor impermissibly cherry-picked the record to find her condition non-severe.

Next, Akers alleges that the ALJ failed to explain why he didn't fully credit her testimony that she could stand and walk for no more than twenty minutes due to neuropathy, pain, and swelling in her feet. Doc. No. 8 at 10. However, the ALJ explained in his decision that while Akers at times reported numbness and tingling in her feet and legs and demonstrated an impaired sensory response, at other times her "gait and station" were normal, and she exhibited no "gross focal neurologic deficits." Doc. No. 4-2 at 23. Similarly, Akers provided inconsistent reports regarding her ability to grocery shop, cook, and manage her personal care–activities that necessarily involve some degree of standing and walking. *Id.* at 21. Finally, the ALJ found moderately persuasive the opinions of the State agency medical consultants, consultative examiner Dr. Girmay, and medical examiner Dr. Eyassu. The medical consultants noted Akers had "generally normal gait and reflexes" notwithstanding the presence of some abnormalities. *Id.* at 24. Dr. Girmay, who personally examined Akers, found that despite some lower extremity sensory impairment, Akers could walk 100 feet without difficulty and perform light work. *Id.* Dr. Eyassu similarly concluded that despite neuropathy, Akers could stand/walk for a total of five hours in an eight-hour workday. *Id.* at 24–25. The record thus establishes that the ALJ properly considered the record as a whole and reconciled conflicting evidence–including Akers' own inconsistent statements–to formulate an RFC supported by substantial evidence.

B.    **Failure to Clarify RFC Restrictions**

8

Case 1:25-cv-00109-KDB    Document 12    Filed 11/19/25    Page 8 of 12

Akers' second assignment of error alleges that the ALJ failed to clarify restrictions in the RFC and that the RFC is consequently unsupported by substantial evidence. Specifically, Akers first asserts that the ALJ erred in crafting the RFC by relying on–and finding moderately persuasive–the opinion of Dr. Eyassu. Doc. No. 8 at 11. Dr. Eyassu opined that Akers could walk for five hours and stand for five hours in a given workday; Akers characterizes this opinion as "vague as to whether this constitutes the total maximum time" she can be on her feet in a an eight-hour workday as it appears to contemplate a ten-hour workday. Doc. No. 8 at 11.

Akers' argument, however, elevates form over substance. The ALJ expressly stated that he interpreted Dr. Eyassu's opinion to mean that Akers could "stand/walk for 5 hours total in an 8-hour workday." Doc. No. 4-2 at 25. Moreover, after considering Dr. Eyassu's opinion and "the treatment received and the symptomatic complaints in the record," including the subjective and objective reports of peripheral neuropathy,[4] the ALJ further restricted Akers to "stand[ing] for up to 3 hours at a time and for a total of up to 5 hours out of an 8 hour workday; [and] walk[ing] for up to 2 hours at a time and for a total of up to 5 hours out of an 8 hour workday and included environmental restrictions specifically tailored to her diabetic neuropathy. *Id.* at 21–22, 24. These restrictions effectively resolve Akers' allegations of ambiguity.

Finally, Akers alleges that the ALJ failed to reconcile a purported conflict in the VE's testimony, asserting that while the ALJ limited the RFC to light work, the VE testified that, in her opinion, a restriction to walking and sitting for five hours in a workday would constitute sedentary work. Doc. No. 8 at 11–12. During the hearing, the VE was presented with a hypothetical where

---

[4] As noted, the ALJ acknowledged Akers' subjective reports and record evidence of peripheral neuropathy, including "numbness and tingling in her hands, feet, and legs," and "peripheral neuropathy affecting claimant's hands and feet. Doc. No. 4-2 at 23–24. In addition, the ALJ noted that Akers had decreased sensory responses in her "feet and lower leg." *Id.* at 23.

9

Case 1:25-cv-00109-KDB    Document 12    Filed 11/19/25    Page 9 of 12

an individual, at the light level of work was restricted to sitting for four hours at a time, up to six hours in an 8-hour workday; standing for up to three hours at a time, up to five hours in an eight-hour workday; and walking for up to two hours at a time, for up to five hours in an eight hour workday. *See* Doc. No. 4-2 at 52. The VE identified several jobs existing in the national economy that accommodated the hypothetical restrictions in reaching, walking and standing, including assembler of electrical accessories; assembler, production; and mail clerk. *Id.* at 52.

Subsequently, Akers' attorney inquired of the VE when a reduction in standing and walking would become sedentary work. *Id.* at 54. The VE responded that in her opinion, two to five hours of standing and walking constitute sedentary work. *Id.* at 54–55. While Akers characterizes this testimony as creating an unresolved conflict, the Court disagrees. SSR 00-4P provides

> Occupational evidence provided by a VE … generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE … evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE … evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

2000 WL 1898704, at *2 (Dec. 4, 2000).

In accordance with SSR 00-4P, the ALJ expressly asked the VE if her testimony was consistent with the DOT during the hearing; the VE confirmed that it was, excepting only some restrictions that do not include walking or standing. Doc. No. 4-2 at 53. In addition, the ALJ explained in his written decision that while the VE's testimony was "consistent with the information in the Dictionary of Occupational Titles ("DOT")," he distinguished her opinions concerning "the effects of a limitation to standing or walking 5 hours a day," by explaining that

10

those statements were "based on her experience, education, and training." Doc. No. 4-2 at 27. Importantly, as SSR 00-4P instructs,

> SSA adjudicators may not rely on evidence provided by a VE … if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions. For example: … [w]e classify jobs as sedentary, light, medium, heavy and very heavy (20 CFR 404.1567 and 416.967). These terms have the same meaning as they have in the exertional classifications noted in the DOT.
>
> Although there may be a reason for classifying the exertional demands of an occupation (as generally performed) differently than the DOT (e.g., based on other reliable occupational information), the regulatory definitions of exertional levels are controlling.

SSR 00-4P, 2000 WL 1898704, at *3 (Dec. 4, 2000).

The ALJ therefore fulfilled his obligations under SSR 00-4P–he confirmed that the VE's testimony identifying jobs at the light exertional level with a restriction to five hours total of standing and walking in an eight-hour workday was in accordance with the DOT, and when Akers' attorney elicited opinion testimony that plainly conflicted with regulatory and the DOT's definitions of sedentary and light work,[5] he appropriately declined to rely on it. Thus, as in

---

[5] The full range of light work requires sitting and standing "frequently." SSR 83-10, at *6. The SSA defines frequently to mean up from one-third to two-thirds of the time. *Id.* Light work, therefore, requires a person to be on their feet between approximately 2.5 to 6 hours per day. *Id.* The full range of sedentary work, however, requires walking and standing "occasionally." SSR 83-10, at *5. "Occasionally means … from very little to up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." *Id.*
Further, the SSA generally determines that "if someone can do light work, … she can also do sedentary work." 20 C.F.R. § 416.967(b). Although Akers is restricted from performing the full range of light work, the RFC fits squarely within SSA regulations, and many ALJs have determined that plaintiffs can do light work when they can stand or walk for less than six hours per workday. *See, e.g., Manuel A. v. Kijakazi,* No. CV 22-2739-BAH, 2023 WL 4664732, at *6 (D. Md. July 20, 2023) (ALJ determined the plaintiff could perform light work where he could stand and walk for four hours per day); *William L. H. v. Saul,* No. CV TMD 19-1328, 2020 WL 3129013 (D. Md. June 12, 2020) (ALJ found plaintiff capable of performing light work where he could stand or walk for three to five hours); *Jackson v. Astrue*, No. 5:11-CV-185, 2012 WL

*Drumgold v. Comm'r of Soc. Sec.,* 144 F.4th 596 (4th Cir. 2025) the record contained conflicting evidence that the ALJ properly resolved, and it is beyond the permissible role of this Court to reweigh the evidence or substitute its judgment for the ALJ's. *See Drumgold,* 144 F.4th at 605 (holding that because the ALJ is the trier of fact, the duty to resolve conflicting medical evidence lies with the ALJ and explaining that when the ALJ "does that by applying the correct factors, we won't Monday-morning-quarterback the decision unless it is exceptionally clear that the ALJ made a mistake."). Moreover, the ALJ offered a "sufficient rationale in crediting certain evidence and discrediting other evidence," *id.* (quoting *Shelley C. v. Comm'r of Soc. Sec. Admin.,* 61 F4th 341, 353 (4th Cir. 2023)), to formulate an RFC supported by substantial evidence. Therefore, Akers' appeal will be denied and the Commissioner's decision will be affirmed.

## V. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

Plaintiff's appeal (Doc. No. 8) is **DENIED,** and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: November 19, 2025

Kenneth D. Bell
United States District Judge

---

6599597, at *8 (N.D.W. Va. May 22, 2012), *report and recommendation adopted,* No. 5:11CV185, 2012 WL 6599340 (N.D.W. Va. Dec. 18, 2012) (ALJ found plaintiff capable of light work where he could stand or walk for no more than five hours in an eight-hour workday).